[Cite as *State v. Ball*, 2014-Ohio-1060.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 99990**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## TYSHAWN BALL

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-12-563268-A

**BEFORE:** Jones, P.J., McCormack, J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** March 20, 2014

**ATTORNEY FOR APPELLANT**

Kevin M. Cafferkey
2000 Standard Building
1370 Ontario Street
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY: Mollie Ann Murphy
Assistant County Prosecutor
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

LARRY A. JONES, SR., P.J.:

{¶1} Defendant-appellant Tyshawn Ball appeals his drug trafficking, drug possession, and possession of criminal tools convictions, which were rendered after a jury trial. We affirm.

## I. Procedural History

{¶2} In June 2012, Ball, along with codefendants Reginald West and Maurice Mowler, was charged in a three-count indictment. Count 1 charged drug trafficking; Count 2 charged drug possession; and Count 3 charged possessing criminal tools. Each count contained several forfeiture specifications.

{¶3} The case proceeded to a jury trial. The defense made a Crim.R. 29 motion for acquittal at the close of the state's case; the motion was denied. The defense rested without presenting evidence.

{¶4} The jury found Ball guilty as to all counts and specifications. Counts 1 and 2 merged for the purpose of sentencing, and the state elected to proceed under Count 1, drug trafficking. The trial court sentenced Ball to 12 months on Count 1, to run concurrently to six months on Count 3. The court also ordered forfeiture of the items subject to the specifications.

## II. Facts

{¶5} In May 2012, Ball, West, and Mowler were apprehended as a result of law enforcement's interdiction work at the Federal Express facility in Bedford Heights. The following events led up to the apprehension.

{¶6} Detective Michael Trombly of the Cuyahoga County Sheriff's Department, and Detectives Franklin Lake and Edwin Cuadra of the Cleveland police, were trained to examine packages at the facility and identify those that may contain illegal narcotics. One of the indicators they were trained to look for was heavily taped packages.

{¶7} On the day in question, Detective Cuadra noticed a box at the facility that looked suspicious because it was heavily taped. The detective also testified that the box came from a "known source" state, and packages from the shipper had previously been intercepted.

{¶8} Detective Cuadra therefore did some research on the package, and learned that the named shipper was not associated with the return address; further, the named recipient was not associated with the receiving address. The detective also felt the package; the contents felt hard. He testified that packages containing illegal drugs are typically compressed as much as possible and wrapped in cellophane so they feel hard like a basketball.

{¶9} Based on his research and observations, Detective Cuadra requested the assistance of Detective Trombly's K-9 partner, Sam. When Detective Trombly went outside to get Sam, Detective Cuadra placed the suspicious package among several other packages in a large room with shelves and storage closets. Sam was trained to alert to the odor of illegal narcotics by scratching.

{¶10} Once in the room, Sam alerted to the subject package. Detective Cuadra retrieved the package and obtained a search warrant to open it. The box was taped and

glued shut, but the detective opened it so as to not destroy it.   Inside the box was a bundle of suspected marijuana, which was wrapped in green cellophane and surrounded by white Styrofoam "peanuts."   The detective removed a small portion of the suspected marijuana for testing, which confirmed that it was marijuana.   Detective Cuadra placed an alarm and tracking device inside the box, and resealed it with tape.   He then gave the package to Detective Lake for delivery.

{¶11} Several detectives, including Cuadra, set up surveillance of the address where the package was to be delivered.   One of the detectives saw codefendant Reginald West outside of the house playing with a dog.   He also saw a red Ford Expedition pull into the driveway of the subject home: Ball was later identified as the driver.   Shortly after that, he saw a purple Isuzu Trooper park on the street; codefendant Mowler was later identified as its driver.   The package was delivered shortly after both cars had arrived.

{¶12} To effectuate the delivery, Detective Lake wore a FedEx uniform and placed a magnetic FedEx sign on the side of a city-owned van.   Upon arriving at the address listed on the package, Detective Lake also saw West outside.   West signed for and accepted the package.   The other detectives saw West initially put the package on the front porch.   However, very shortly after placing it there, West took the package and got in the passenger side of the red Expedition.

{¶13} The red Expedition then pulled out of the driveway, the Trooper pulled out from where it was parked, turned around in a driveway, and proceeded behind the Expedition.   The undercover police vehicles followed the two cars.   The Expedition

and Trooper were driven for an approximate 35-minute, 12-mile drive, which included freeway driving. The cars were never more than two vehicles apart during the entire time. The Expedition was the lead vehicle, with the exception of, when, near the end of the drive, the Expedition pulled over to a curb, the Trooper pulled up alongside side of it, Ball and Mowler had a brief conversation, and the Trooper then took the lead.

{¶14} After a short drive, the Trooper turned into a parking lot for an apartment complex, where Mowler used a key to open a gate to fully access the lot. The gate stayed open for a couple of minutes, allowing the Expedition and the undercover police vehicles to gain access to the parking lot as well. The detectives stopped both the Trooper and the Expedition.

{¶15} Mowler denied living in the apartment complex, but a passer-by identified him as a resident and Mowler then admitted that he resided there. Detective Lake asked Mowler if he could search his apartment, and Mowler consented. Meanwhile, Ball and West were removed from the Expedition, and the package with the marijuana was recovered. Ball and West were advised of their *Miranda* rights and placed under arrest.

{¶16} A K-9 dog, Daisy, assisted the detectives in their search of Mowler's apartment. Daisy was trained to alert to illegal drugs by sitting. She alerted to a garbage can and a drawer, both in the kitchen. The garbage can contained marijuana; the drawer contained $694 in cash. Further, the detectives recovered the following elsewhere in the apartment: $9,000 in cash, contained in nine separate packs of $1,000 each; a scale; packaging material; a food saver machine used to shrink wrap food; and a

2010 traffic ticket issued to the "owner" of a "Ford station wagon" with the same license plate number as the Expedition.

### III. Law and Analysis

{¶17} Ball now challenges his conviction in the following assigned errors:

I. The state committed prosecutorial misconduct when it referred to evidence not in the record during its closing arguments.

II. The defendant-appellant was denied his right to effective assistance of counsel.

III. The jury's verdict was based on insufficient evidence.

IV. The jury's verdict was against the manifest weight of the evidence.

<u>Prosecutorial Misconduct</u>

{¶18} For his first assignment of error, Ball contends that the assistant prosecuting attorney engaged in misconduct by referring to evidence not in the record. Specifically, in discussing the defendants' actions after the package was delivered and before they left the house in the cars, the assistant prosecuting attorney stated the following: "Mr. Ball and Mr. West pull out, wave, coast is clear, [Mowler decides] I'm going to follow them. I'm going to make sure they're not being tailed." The defense did not object to the statement.

{¶19} "The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant." *State v. Smith*, 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984). A prosecutor's conduct cannot be grounds for error unless such conduct

deprived the defendant of a fair trial. *State v. Evans*, 63 Ohio St.3d 231, 240, 586 N.E.2d 1042 (1992). Absent the deprivation of a fair trial, no constitutional error occurs. *Darden v. Wainwright*, 477 U.S. 168, 183, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986).

{¶20} The Supreme Court of Ohio has cautioned that prosecutorial misconduct constitutes reversible error only in rare instances. *State v. Keenan*, 66 Ohio St.3d 402, 405, 613 N.E.2d 203 (1993). Additionally, a failure to object requires that we review any error under the stringent plain error standard. Crim.R. 52(B); *Evans* at *id.*

{¶21} We must review a closing argument in its entirety to determine whether prejudicial error exists. *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, 781 N.E.2d 88, ¶ 94. A prosecutor's statements are not be taken out of context and given their most damaging meaning. *Id.* Further, prosecutors are given considerable latitude in closing argument. *State v. Dillon*, 10th Dist. Franklin No. 04AP-1211, 2005-Ohio-4124, ¶ 50. The prosecutor is entitled to comment on "what the evidence has shown and what reasonable inferences may be drawn therefrom." *State v. Butler*, 10th Dist. Franklin No. 03AP-800, 2005-Ohio-579, ¶ 11.

{¶22} Ball contends that the assistant prosecuting attorney's statement was improper because none of the witnesses testified that Ball or West waved to Mowler or that Mowler waved to them. Thus, Ball contends that the statement improperly suggested that the defendants were "acting in concert," and that "Ball knew Mowler was there and wanted Mowler to follow."

{¶23} We do not find that the assistant prosecuting attorney's statement was improper. As already stated, the state can comment on reasonable inferences that can be drawn from the evidence. A reasonable inference from the evidence presented here was that Mowler, Ball, and West were indeed acting in concert, and that Ball wanted Mowler to follow him. The following evidence supported that inference.

{¶24} Shortly before delivery of the package, West was outside of the subject house playing with a dog, and the Expedition arrived and pulled into the driveway. Shortly thereafter, the Trooper arrived on the street. The package was delivered; West signed for and accepted it, and shortly thereafter took the package and got into the passenger side of the Expedition.

{¶25} When Ball drove the Expedition out of the driveway, Mowler turned around in a driveway, and drove in the same direction as Ball. The two cars were driven for an approximate 35-minute, 12-mile drive, which included freeway driving. During that entire time, the cars were never more than two vehicles apart. Further, near the end of the ride, the two cars pulled side-by-side and Ball and Mowler had a brief conversation. Mowler, who had up until that point been following Ball, assumed the lead just prior to arriving at his apartment complex.

{¶26} At Mowler's apartment complex, a key was needed to open a gate to get onto the parking lot. Mowler used his key to open the gate, which stayed opened for a couple of minutes, allowing Ball access onto the parking lot as well. A ticket issued to the "owner" of a "Ford station wagon" with the same license plate number as the

Expedition was found during a search of Mowler's apartment.

{¶27} The above testimony supported an inference that the defendants were indeed acting in concert. Ball's first assignment of error is, therefore, overruled.

Ineffective Assistance of Counsel

{¶28} Ball contends in his second assigned error that counsel's failure to object to the assistant prosecuting attorney's statement that was the subject of the first assigned error constituted ineffective assistance of counsel.

{¶29} "Reversal of convictions on ineffective assistance requires the defendant to show 'first that counsel's performance was deficient and, second that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial.'" *State v. Cassano*, 96 Ohio St.3d 94, 2002-Ohio-3751, 772 N.E.2d 81, ¶ 105, quoting *Strickland v. Washington*, 466 U.S. 668, 669, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). When considering a claim of ineffective assistance of counsel, the court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland* at 689.

{¶30} A tactical decision by trial counsel, who as a licensed attorney is presumed to be competent, is not by itself enough to show ineffective assistance of counsel simply because the strategy did not result in an acquittal. *State v. Clayton*, 62 Ohio St.2d 45, 48-49, 402 N.E.2d 1189 (1980); *State v. Timm*, 3d Dist. Seneca No. 13-11-23, 2012-Ohio-410, ¶ 31. "Furthermore, trial counsel's failure to object is generally viewed as trial strategy and does not establish ineffective assistance." *State v. Turks*, 3d Dist.

Allen No. 1-08-44, 2009-Ohio-1837, ¶ 43.

**{¶31}** For the reasons previously stated, counsel's failure to object did not fall below an objective standard of reasonableness. In sum, the statement was a reasonable inference from the presented testimony. Moreover, counsel's failure to object did not prejudice Ball so that the outcome of the trial was fundamentally unfair to him.

**{¶32}** In light of the above, the second assignment of error is overruled.

Sufficiency and Manifest Weight of the Evidence

**{¶33}** In his third and fourth assignments of error, respectively, Ball contends that the evidence was insufficient to sustain the conviction and that the conviction was against the manifest weight of the evidence.

**{¶34}** Although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency. *State v. McCrary*, 10th Dist. Franklin No. 10AP-881, 2011-Ohio-3161, ¶ 11, citing *State v. Braxton*, 10th Dist. Franklin No. 04AP-725, 2005-Ohio-2198, ¶ 15. "[T]hus, a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." *Braxton* at *id.* We find the weight of the evidence dispositive here.

**{¶35}** The weight of the evidence concerns the inclination of the greater amount of credible evidence offered to support one side of the issue rather than the other. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). When presented with a

challenge to the manifest weight of the evidence, an appellate court may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.* An appellate court should reserve reversal of a conviction as being against the manifest weight of the evidence for only the most "'exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶36} In addressing a manifest weight of the evidence argument, we are able to consider the credibility of the witnesses. *State v. Cattledge*, 10th Dist. Franklin No. 10AP-105, 2010-Ohio-4953, ¶ 6. However, in conducting our review, we are guided by the presumption that the jury, or the trial court in a bench trial, "'is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" *Id.*, quoting *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Accordingly, we afford great deference to the jury's determination of witness credibility. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

{¶37} Ball contends that the conviction was against the weight of the evidence because the evidence did not demonstrate that he knew or should have known that the

package contained marijuana, or that he knew or had reasonable cause to believe that the marijuana was intended for sale or resale. According to Ball, the state did not demonstrate that he saw West accept the package or put it in the vehicle.

{¶38} The drug-possession statute prohibits a person from "knowingly * * * possess[ing]" drugs. R.C. 2925.11(A). "Possess" and "possession" in this context mean "having control over a thing or substance." R.C. 2925.01(K). Control can be actual or constructive.

{¶39} A person has actual control over a thing that he can at the moment control and has constructive control over a thing that he cannot immediately control but has the ability to control. The possession of drugs can be actual or constructive. *State v. Dillard*, 173 Ohio App.3d 373, 2007-Ohio-5651, 878 N.E.2d 694, ¶ 53 (2d Dist.).

{¶40} To constructively possess drugs, a person must be able to exercise "'dominion and control'" over them, "'even if [they] [were] not within his immediate physical possession.'" *Id.*, quoting *State v. Mabry*, 2d Dist. Montgomery No. 21569, 2007-Ohio-1895, ¶ 18. Constructive possession of drugs may be inferred from "the surrounding facts and circumstances, including the defendant's actions." *State v. Pilgrim*, 184 Ohio App.3d 675, 2009-Ohio-5357, 922 N.E.2d 248, ¶ 28 (10th Dist.).

{¶41} Proving dominion and control is not enough, however. By statute, possession of drugs "may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). It must also be proved that the drugs were

possessed knowingly. "A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). *See also* R.C. 2901.21(D)(1) ("Possession is a voluntary act if the possessor knowingly procured or received the thing possessed, or was aware of the possessor's control of the thing possessed for a sufficient time to have ended possession.").

{¶42} Moreover, R.C. 2923.03(A)(2) governs complicity by aiding and abetting, and provides that "[n]o person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense[.]" Whoever violates R.C. 2923.03 "shall be prosecuted and punished as if he were a principal offender." R.C. 2923.03(F).

{¶43} "To support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal." *State v. Johnson*, 93 Ohio St.3d 240, 754 N.E.2d 796 (2001), syllabus. "Such criminal intent can be inferred from the presence, companionship, and conduct of the defendant before and after the offense is committed." *In re T.K.*, 109 Ohio St.3d 512, 2006-Ohio-3056, 849 N.E.2d 286, ¶ 13. However, "the mere presence of an accused at the scene of a crime is not sufficient to prove, in and of itself, that the accused was an aider and abettor." (Quotations and citation omitted.) *Johnson* at 243.

{¶44} Upon review, the weight of the evidence supports Ball's conviction. We

have considered Ball's contention that the conviction should be reversed because there was no testimony that he saw West accept the package or put it in the vehicle. He is correct that there was no direct testimony on that point, but there was circumstantial evidence. "Circumstantial evidence is sufficient to establish an element of any crime." *State v. Kutsar*, 8th Dist. Cuyahoga No. 89310, 2007-Ohio-6990, ¶ 20.

**{¶45}** The circumstantial evidence here showed that Ball was more than merely present during the incident. He arrived at the subject house shortly before the package was delivered. Mowler also arrived in the Isuzu. After West had the package and put it in the Expedition, Ball, driving the Expedition, pulled out of the driveway. Mowler turned around in a driveway and followed the Expedition. The Expedition and Isuzu were driven for approximately 12 miles, in the course of about 35 minutes, and were never more than two vehicles apart, even when on the freeway. Near the end of the drive, the cars pulled side-by-side, and Mowler and Ball had a conversation.

**{¶46}** After Mowler and Ball finished talking, Mowler, who had previously been following Ball, took the lead and drove to his apartment complex. A search of Mowler's apartment revealed a traffic ticket issued to the "owner" of a "Ford station wagon," listing the same license plate numbers of the Expedition Ball was driving. The apartment also contained criminal tools used for and gained from drug trafficking.

**{¶47}** The weight of the above testimony demonstrated that Ball acted in concert with West and Mowler. Because we found that the weight of the evidence supports the conviction, we also necessarily find that the evidence was sufficient to support the

conviction.

**{¶48}** In light of the above, the third and fourth assignments of error are overruled.

**{¶49}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LARRY A. JONES, SR., PRESIDING JUDGE

TIM McCORMACK, J., and
EILEEN T. GALLAGHER, J., CONCUR