[Cite as *State v. Meadows*, 2020-Ohio-802.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

STATE OF OHIO,                                  :

    Plaintiff-Appellee,                  :

                                No. 108452

    v.                                           :

ISAIAH S. MEADOWS,                            :

    Defendant-Appellant.               :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED AND REMANDED
**RELEASED AND JOURNALIZED:** March 5, 2020

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-16-607612-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Kelly N. Mason, Assistant Prosecuting Attorney, *for appellee.*

Rick L. Ferrara, *for appellant.*

MARY J. BOYLE, P.J.:

{¶ 1} Defendant-appellant, Isaiah Meadows, appeals his rape conviction and the trial court's imposition of costs. He raises two assignments of error for our review:

1. The trial court failed to journalize its findings suspending[1] costs and fines.

2. The manifest weight of the evidence did not support a conviction of appellant.

{¶ 2} Finding merit to Meadows's first assignment of error only, we affirm the trial court's judgment and remand the matter to the trial court for it to issue a nunc pro tunc entry reflecting that the payment of costs are stayed while Meadows remains incarcerated.

## I. Procedural History and Factual Background

{¶ 3} On July 8, 2016, a Cuyahoga County Grand Jury indicted Meadows for rape in violation of R.C. 2907.02(A)(2), a felony of the first degree (Count 1); attempted rape in violation of R.C. 2923.02 and 2907.02(A)(2), a felony of the second degree (Count 2); kidnapping in violation of R.C. 2905.01(A)(4), a felony of the first degree (Count 3); grand theft in violation of R.C. 2913.02(A)(1), a felony of the fourth degree (Count 4); criminal damaging or endangering in violation of R.C. 2909.06(A)(1), a misdemeanor of the first degree (Count 5); two counts of failure to comply in violation of R.C. 2921.331(B), one a felony of the fourth degree and the other a felony of the third degree (Counts 6 and 7, respectively); having weapons while under disability in violation of R.C. 2923.13(A)(2), a felony of the third degree (Count 8); carrying a concealed weapon in violation of R.C. 2923.12(A)(2), a felony of the fourth degree (Count 9); and improperly handling firearms while in a motor

---

[1] In his first assignment of error, Meadows uses the term "suspending," but he uses the term "staying" throughout the remainder of his appellate brief. The trial court also used the term "stay" during the sentencing hearing.

vehicle in violation of R.C. 2923.16(B), a felony of the fourth degree (Count 10). The counts for rape, attempted rape, kidnapping, and grand theft carried one- and three-year firearm specifications and forfeiture specifications. The rape, attempted rape, and kidnapping counts also carried notice of prior conviction and repeat violent offender specifications. The rape and attempted rape counts carried a sexually violent predator specification, and the kidnapping count carried a sexual motivation specification.

{¶ 4} In March 2017, Meadows pleaded guilty to an amended indictment that included eight of the counts. Two of the counts were nolled. The trial court sentenced Meadows to an aggregate prison term of 33 years for the offenses.

{¶ 5} In May 2017, Meadows appealed his convictions, arguing that the trial court failed to comply with Crim.R. 11 when it accepted his plea. *See State v. Meadows*, 8th Dist. Cuyahoga No. 105753, 2017-Ohio-8407. The state conceded the error on appeal, and we reversed and remanded the case, finding that the trial court failed to advise Meadows of his constitutional rights and comply with Crim.R. 11. *Id.* at ¶ 3.

{¶ 6} Upon remand, the case proceeded to trial. Meadows waived his right to a jury trial for having weapons while under a disability (Count 8) as well as for the repeat violent offender specifications, notice of prior conviction specifications, and sexually violent predator specification attached to the rape, attempted rape, and kidnapping (Counts 1 through 3), which were tried to the bench. The remaining counts were tried to a jury.

{¶ 7} The following facts were presented at trial.

{¶ 8} On June 28, 2016, T.T. came home from work around 2:30 a.m. and was sitting in her car smoking a cigarette outside of her sister's apartment building in East Cleveland, where she was living at the time. As she was sitting there, T.T. noticed a man walk past her car. The man then circled around her vehicle, came to the driver's door, brandished a gun, and told T.T. "to open the door before he [shot her] and [to] scoot over." T.T. said after she saw the gun, she put her head down, moved over to the passenger seat, and begged the man not to shoot her. T.T. said the man sat in the driver's seat and pointed the gun at her. T.T. "tried [her] hardest not to look at him" because she was frightened that he would shoot her and could only describe the man as "a little tall" and African American. T.T. said she never saw the man before.

{¶ 9} The man then told T.T. that she was going to perform oral sex on him or that he would shoot her. T.T. said the man forced her to perform oral sex and swallow his ejaculate while he pointed the gun at her head. After the man ejaculated, he told T.T. that he wanted to have vaginal intercourse with her as well. T.T. told the man "no," claiming to be on her menstrual cycle. The man then told T.T. to get out of the car before he shot her and drove away in T.T.'s car.

{¶ 10} After the man left the scene, T.T. ran to the outside of her sister's apartment building and began to scream for her sister. T.T., who was "shaking and crying," told her sister what happened, and her sister called the police. The police arrived shortly, followed by an ambulance. T.T. told the police what happened, and

then the ambulance took her to the hospital. When she went to the hospital, T.T. was still wearing the same clothes that she was wearing in the car with Meadows. At the hospital she had a rape kit and rapid HIV test performed, and she remained at the hospital until the afternoon. The SANE nurse that met with T.T. described T.T. as "tearful, soft-spoken, [and] crying at intervals" when being asked about the incident.

{¶ 11} Around 6:00 a.m. that same day, police spotted T.T.'s vehicle and engaged in a chase when the vehicle failed to pull over after police turned on their emergency lights. The chase ended when the man (later identified as Meadows) crashed T.T.'s vehicle and totaled it. Meadows fled on foot before the police officer detained him and took him into custody. The police officer also located a loaded firearm that Meadows had hid in the back of a police cruiser after he was arrested. The muzzle of the firearm contained traces of both T.T.'s and Meadows's DNA, and its handle contained DNA from Meadows.

{¶ 12} Meadows was taken to the hospital by ambulance around 7:00 a.m., accompanied by police officers. Meadows consented to a suspect exam rape kit around 10:00 a.m. after he was treated for other injuries. While at the hospital, Meadows admitted to being in a stolen vehicle, but he denied the sexual assault. T.T.'s DNA was found on Meadows's penile swabs, and his semen was found on T.T.'s shirt.

{¶ 13} Meadows also agreed to speak to detectives about the incident, which was video and audio recorded and played to the jury.

{¶ 14} During the interview, Meadows said he did not know T.T., and he denied raping her. Meadows admitted to being in T.T.'s car and being chased by police before he totaled it. When asked why he chose T.T., Meadows responded, "Just random. * * * This shit was not supposed to happen." He also stated, "If I could see that girl, man, I'd tell her I am * * * sorry, man. I'd tell her I'm * * * sorry, bro. * * * She wasn't supposed to get it, man. She was just at the wrong place, wrong time, man. Wrong place, wrong time." Meadows continued, saying, "She was not supposed to be the one. * * * My mind was on bullshit, and she was in the wrong place at the wrong time." Toward the end of the interview, Meadows acknowledged that he walked past T.T.'s car, noticed that she was alone, approached the driver's door, and made T.T. slide over. When asked what his intent was, Meadows responded, "I am a * * * man. You feel what I am saying? I am a man."

{¶ 15} Meadows moved for acquittal under Crim.R. 29, which the trial court denied. Meadows did not present any witnesses on his behalf and renewed his Crim.R. 29 motion, which the trial court again denied.

{¶ 16} The jury found Meadows not guilty of attempted rape (Count 2) and the attached specifications. But the jury found him guilty of the remaining charges and specifications: rape (Count 1) with one- and three-year firearm specifications and forfeiture specification; kidnapping (Count 3) with one- and three-year firearm specifications and forfeiture specification; grand theft (Count 4) with one- and three-year firearm specifications and forfeiture specification; criminal damaging or endangering (Count 5) with one- and three-year firearm specifications and

forfeiture specification; both counts of failure to comply (Counts 6 and 7); carrying a concealed weapon (Count 9); and improperly handling firearms while in a motor vehicle (Count 10). The trial court found Meadows guilty of having weapons while under a disability (Count 8) with forfeiture specification; the specifications of notice of prior conviction, repeat violent offender, and sexually violent predator for rape (Count 1); and the specifications of notice of prior conviction and repeat violent offender for kidnapping (Count 3).

{¶ 17} At sentencing, the trial court found that Meadows's convictions for rape (Count 1) and kidnapping (Count 3) merged and his convictions for failure to comply (Counts 6 and 7) merged. The state elected to sentence on rape and Count 7 of failure to comply. The trial court sentenced Meadows as follows:

> Count 1, rape: Life imprisonment without parole eligibility for 15 years; one-and three-year firearm specifications merge into the three-year firearm specification; and five years for the repeat violent offender specification. The 3 years for the firearm specification is to run prior and consecutively to the 5 years for the repeat violent offender specification and the 15 years for the underlying rape sentence, for a total of life imprisonment without parole eligibility for 23 years.
>
> Count 4, grand theft: 18 months, concurrent; one- and three-year firearm specifications merge into the three-year firearm specification, to be served prior and consecutive to the 18-month term
>
> Count 5, criminal damaging: 180 days in county jail, to be served concurrent to the other sentences
>
> Count 7, failure to comply: 36 months to be served prior to all other offenses
>
> Count 8, having weapons while under disability: 36 months, to be served concurrent to the other sentences

Count 9, carrying a concealed weapon: 18 months, to be served concurrent to the other sentences

Count 10, improperly handling firearms while in a motor vehicle: 18 months, to be served concurrent to the other sentences

{¶ 18} The trial court found that the three-year firearm specifications for the rape and grand theft did not merge and were to run consecutively. The trial court also notified Meadows that he was classified as a Tier III sex offender and was subject to lifetime of in-person verification every 90 days. The aggregate sentence was therefore life imprisonment with parole eligibility after 29 years in prison.

{¶ 19} It is from this judgment that Meadows now appeals.

## II. Law and Analysis

### A. Costs

{¶ 20} In his first assignment of error, Meadows argues that the trial court failed to journalize its order that the payment of costs are stayed while Meadows is incarcerated.[2] During the sentencing hearing, defense counsel requested that the trial court "waive" costs since Meadows is indigent. The state indicated that it would "defer to the court with regard to that request." The trial court replied, "Okay. Stayed while incarcerated." The trial court's sentencing journal entry imposes costs but does not state that those costs are stayed while Meadows is incarcerated. The state concedes that the trial court did not journalize its order that costs would be

---

[2] Defense counsel also requested that the trial court "waive" fines, and appellant's brief argues that the trial court stayed both costs and fines, but the trial court did not impose any fines. We will therefore limit our discussion to costs.

stayed, and the state has no objection to this court remanding to the trial court for it to issue a nunc pro tunc entry to correct this clerical mistake.

{¶ 21} "[T]he axiomatic rule is that a court speaks through its journal entries." *State v. Miller*, 127 Ohio St.3d 407, 2010-Ohio-5705, 940 N.E.2d 924, ¶ 12. It is therefore essential for those journal entries to be an accurate and truthful reflection of the court's proceedings. *State ex rel. Worcester v. Donnellon*, 49 Ohio St.3d 117, 118, 551 N.E.2d 183 (1990). A court may correct a clerical mistake in a judgment entry to accurately reflect the case's proceedings at any time. Crim.R. 36; *In re F.M.,* 8th Dist. Cuyahoga No. 93255, 2009-Ohio-6317, ¶ 9. A "'clerical mistake'" is "'a mistake or omission, mechanical in nature and apparent on the record, which does not involve a legal decision or judgment.'" *State ex rel. Cruzado v. Zaleski*, 111 Ohio St.3d 353, 2006-Ohio-5795, 856 N.E.2d 263, ¶ 19, quoting *State v. Brown*, 136 Ohio App.3d 816, 819-820, 737 N.E.2d 1057 (3d Dist.2000).

{¶ 22} When clerical mistakes are raised on appeal, Ohio appellate courts may remand the issue to the trial court and direct that the court correct the misstatement through a nunc pro tunc entry. App.R. 9(E); *State v. Peacock*, 8th Dist. Cuyahoga No. 102567, 2015-Ohio-4697, ¶ 40. A trial court's failure to incorporate what occurred at a sentencing hearing into the sentencing journal entry is "a clerical mistake that may be corrected by the court through a nunc pro tunc entry to reflect what actually occurred in open court." *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 30.

{¶ 23} Here, the trial court at the sentencing hearing stayed the payment of court costs while Meadows is incarcerated. The trial court, however, failed to stay the costs in the sentencing journal entry. We therefore remand the matter for the trial court to issue a nunc pro tunc entry to reflect that the costs are stayed while Meadows is incarcerated.

{¶ 24} Accordingly, we sustain Meadows's first assignment of error.

**B. Manifest Weight of the Evidence**

{¶ 25} In his second assignment of error, Meadows argues that his conviction for rape was against the manifest weight of the evidence.

{¶ 26} A challenge to the manifest weight of the evidence tests whether the prosecution has met its burden of persuasion. *State v. Thompkins*, 78 Ohio St.3d 380, 388, 678 N.E.2d 541 (1997). "When considering an appellant's claim that a conviction is against the manifest weight of the evidence, the court of appeals sits as a 'thirteenth juror' and may disagree with the factfinder's resolution of conflicting testimony." *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.E.2d 652 (1982). On review of a manifest-weight challenge, the appellate court is tasked with reviewing all of the evidence in the record and in resolving the conflicts therein, determining whether the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶ 27} Although we sit as the thirteenth juror, questions of weight and credibility are primarily for the trier of fact to determine. *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). This is because "'[t]he demeanor of witnesses, the manner of their responses, and many other factors observable by a jury * * * simply are not available to an appellate court on review.'" *State v. Bailey*, 8th Dist. Cuyahoga No. 97754, 2012-Ohio-3955, ¶ 11, quoting *State v. Bierbaum*, 3d Dist. Seneca No. 13-88-18, 1990 Ohio App. LEXIS 1204 (Mar. 4, 1990). "[W]hen considering a manifest[-]weight challenge, the trier of fact is in the best position to take into account inconsistencies, along with the witnesses' manner, demeanor, gestures, and voice inflections, in determining whether the proffered testimony is credible." *State v. McNamara*, 8th Dist. Cuyahoga No. 104168, 2016-Ohio-8050, ¶ 36, citing *State v. Kurtz*, 8th Dist. Cuyahoga No. 99103, 2013-Ohio-2999. "The jury may take note of any inconsistencies and resolve them accordingly, 'believing all, part, or none of a witness's testimony.'" *State v. Hill*, 8th Dist. Cuyahoga No. 98366, 2013-Ohio-578, ¶ 33, quoting *State v. Raver*, 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958. "Therefore, we afford great deference to the factfinder's determination of witness credibility." *Id.*

{¶ 28} Meadows challenges his rape conviction under R.C. 2907.02(A)(2), which states, "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." He argues that while "he admitted to being the man in the vehicle, having a gun, pointing it at T.T., taking her car, and leading [police on] a high[-]speed chase

through East Cleveland, and crashing the car[,]" he "never admitted to forcing [T.T.] to perform oral sex." He argues that the sexual conduct was consensual and maintains that the victim's allegation that the sexual conduct was forced was not credible and was not enough to overcome his presumption of innocence. We disagree.

{¶ 29} T.T. testified that Meadows, whom she did not know, threatened her with a gun to get inside her vehicle, forced her to perform oral sex, and stole her car and her belongings inside the car. That night she spoke with the police, went to the hospital, and had a rape kit performed. Throughout the investigation and trial, T.T.'s version of the incident remained largely consistent. The jury was in the best position to take into account any inconsistencies as well as T.T.'s demeanor, manner, gestures, and voice inflections and found T.T. to be credible. Further, witnesses who interacted with T.T. immediately following the incident described T.T. as shaking, crying, tearful, and soft-spoken.

{¶ 30} Further, in his interview with police, Meadows admitted that he walked passed T.T.'s car, noticed that she was alone, approached the driver's side door, and forced T.T. to slide over. He also admitted to stealing the car. Meadows told police that he would apologize to T.T. and that she was just in the wrong place at the wrong time. When asked why he got in T.T.'s car, Meadows responded that he "was a man." Finally, there was no evidence to suggest that T.T. willingly engaged in the oral sex with Meadows. Although she did not suffer any physical injuries,

T.T.'s DNA was on the muzzle of the firearm that was found on Meadows, corroborating T.T.'s account that Meadows held a gun to her.

**{¶ 31}** Affording great deference to the jury's credibility determination, we do not find that this is the exceptional case in which the evidence weighs heavily against the conviction. Accordingly, we overrule Meadows's second assignment of error and affirm his rape conviction.

**{¶ 32}** Judgment affirmed and remanded for the trial court to issue a nunc pro tunc entry stating that costs are stayed while Meadows is incarcerated.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for issuance of a nunc pro tunc entry and for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY J. BOYLE, PRESIDING JUDGE

PATRICIA ANN BLACKMON, J., and
EILEEN A. GALLAGHER, J., CONCUR

Journalize findings, nunc pro tunc, manifest weight of the evidence, rape

The trial court failed to journalize the fact that it suspended Meadows's obligation to pay costs while he was incarcerated in its sentencing journal entry, which can be corrected through a nunc pro tunc entry. Meadows's conviction for rape was not against the manifest weight of the evidence.