[Cite as *State v. Liccardo*, 2026-Ohio-1864.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

    v.                                      :

SHANNON LICCARDO,                  :

    Defendant-Appellant.         :

No. 115471

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** May 21, 2026

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-23-682274-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Kevin R. Filiatraut, Assistant Prosecuting Attorney, *for appellee*.

Edward F. Borkowski, Jr., *for appellant*.

MICHAEL JOHN RYAN, J.:

{¶ 1} Defendant-appellant Shannon Liccardo ("Liccardo") appeals his murder and felonious assault-convictions that were rendered after a jury trial. For the reasons set forth below, we affirm.

**Procedural History**

{¶ 2} On June 22, 2023, Liccardo was charged in a six-count indictment with crimes related to the fatal shooting of Patrick Wilkinson ("Wilkinson"). Count 1 charged aggravated murder; Counts 2 and 3 charged murder; Counts 4 and 5 charged felonious assault; and Count 6 charged discharge of a firearm on or near prohibited premises. All six counts contained one-, three-, and five-year firearm specifications.

{¶ 3} The matter proceeded to a jury trial in September 2024. The jury was hung, and the trial court declared a mistrial. The matter was set for a retrial.[1]

{¶ 4} Prior to the commencement of the second trial, the State notified the trial court of two preliminary matters. First, the State informed the court and the defense of its desire to argue, as an alternative theory, that Liccardo was complicit in the murder of Wilkinson.

{¶ 5} Second, the State informed the trial court that the shooting at issue occurred in a vehicle Liccardo was driving and there were three passengers in the vehicle at the time. All three passengers testified at the first trial. One of the passengers, Jai Chandler ("Chandler"), had since moved out of the State of Ohio, the State was unable to obtain personal service on him to subpoena him for the retrial, and the State did not anticipate that Chandler would voluntarily appear for the trial.

---

[1] In the time between the mistrial and the retrial, a new judge was elected to the seat for which this matter appeared on the docket. The new judge presided over the retrial.

{¶ 6} The State informed the trial court that Chandler had a prior conviction for involuntary manslaughter and that the defense used that conviction in the first trial to impeach Chandler.  If Chandler did not testify at the second trial, it was the State's request that the defense be prohibited from mentioning his prior conviction.

{¶ 7} The trial court held both of the State's requests in abeyance.

**Facts as Elicited at Trial**

{¶ 8} As mentioned, the subject shooting occurred from a vehicle Liccardo was driving; there were three passengers in the vehicle at the time.  As the State predicted, Chandler, one of the passengers, did not appear to testify.  The two other passengers were Benesha Allen ("Allen") and Toni Matthews ("Matthews") and both testified.

{¶ 9} Allen and Matthews are sisters, and Chandler is the father of Allen's child.   Allen, Matthews, the sisters' mother (Malissa Matthews ("Malissa")), Chandler, and Liccardo all belonged to a motorcycle club called the Soul Devils. Members of the Soul Devils had nicknames; Liccardo's nickname was "Golden."

{¶ 10} On June 10, 2023, the group went on an overnight trip to Memphis, Tennessee;  Liccardo drove them in a Kia Sorento.  The group returned to Cleveland on June 11, 2023, with Liccardo driving the Kia again but this time without Malissa, who returned home with another driver from the Cleveland area.  On the trip back to Cleveland, Chandler was the front-seat passenger and Allen and Matthews were the back-seat passengers.

{¶ 11} Allen testified that Liccardo had been drinking all throughout their short trip and he seemed "off" on the return trip. Further, while on the drive back, Liccardo learned that a good friend of his from another motorcycle club he previously belonged to had died from injuries sustained in a motorcycle accident.

{¶ 12} The plan was that Liccardo would drop Allen and Matthews off at Malissa's house in Maple Heights. They arrived in Maple Heights, near Malissa's house, and were stopped at a red light at the intersection of Libby and Lee Roads when they were rear ended by a pickup truck driven by the victim, Wilkinson. Liccardo got out of the Kia to exchange insurance information with Wilkinson, but Wilkinson told Liccardo he was not going to give him his information. Matthews also got out of the vehicle, took pictures of the cars and Wilkinson's license plate, and took video of Liccardo and Wilkinson's encounter on her cell phone. The evidence from Matthews's cell phone was shown to the jury and entered into evidence. *See* State's exhibits Nos. 200 and 202. On the video, Matthews described Wilkinson as being "drunk." Without giving any information to Liccardo, Wilkinson drove off.

{¶ 13} Matthews's video showed Chandler, who was also out of the Kia and standing by the front passenger door say, "Don't do it," as Wilkinson began to drive away. Matthews said, "This guy just did a hit and run." Liccardo told them to get in the car. Once they were all in the car, Liccardo asked if they got the license plate information; it is not clear what Chandler's answer was but Matthews answered that she did. Chandler said, "Give my bag," which he clarified meant his bookbag.

{¶ 14} Allen testified that Liccardo drove off to follow the pickup truck, took a gun out of his glove compartment, and started shooting. Allen and the other passengers ducked when Liccardo began firing the gun; at the time, she was not sure if he hit anything or anyone.

{¶ 15} On cross-examination, Allen testified that after Liccardo retrieved the gun from the glove compartment she saw him stick his arm, with the gun in his left hand, out of the window. At that point, Allen ducked and heard shots being fired. She did not actually see Liccardo fire the weapon.

{¶ 16} Further, on cross-examination, the defense had Allen review portions of her testimony from the first trial on these charges. Her testimony at the first trial was that she saw Liccardo's left arm extend out of the window but she did not see anything in his hand. Allen testified at the first trial that she ducked when she saw Liccardo extend his arm out of the window because he had been asking for his gun.

{¶ 17} On redirect-examination, the assistant prosecuting attorney asked Allen if, in her prior testimony and written statement to the police, she had indicated that anyone other than Liccardo was the shooter. Allen responded, "No."

{¶ 18} According to Matthews, as Liccardo got close to Wilkinson's truck, she ducked, could feel the Kia swerving, and then heard gunshots. Matthews testified that neither she, Allen, nor Chandler fired the shots. After the shots were fired, she, Allen, and Chandler yelled at Liccardo to take them to Malissa's house, which he did.

{¶ 19} Two on-duty Maple Heights police officers were responding to an unrelated matter when they saw Wilkinson's truck on a tree lawn on Libby Road.

The officers noticed a man slumped over the steering wheel and they stopped to investigate. The man — Wilkinson — was bleeding from the back of his head and the officers noticed a bullet hole in the back window of his truck. At approximately the same time they encountered Wilkinson, the officers received a call for shots fired in the area; the caller described hearing five shots. The police extracted Wilkinson from his vehicle and performed CPR on him while waiting for medical first responders to arrive and transport him to a hospital.

{¶ 20} At the hospital, Wilkinson was put on life support and, after testing, medical professionals determined that he would not recover from the gunshot injury he sustained. Wilkinson's wife consented to donating his organs. Thus, Wilkinson was kept alive for several days to effectuate the donations, and his official date of death was June 15, 2023.

{¶ 21} After Wilkinson's death, a post announcing it was placed on the Cleveland Remembrance Page, an internet site that posts about murders and other tragedies in the greater Cleveland area. Allen saw the post and believed that the victim's truck described in it was the same truck that had hit Liccardo's vehicle on the night in question. Allen, Matthews, and Malissa voluntarily went to the Maple Heights Police Department and made statements. Chandler separately voluntarily went to the police and made a statement. Allen, Matthews, and Chandler also turned over their cell phones to the police.

{¶ 22} The investigating detective on the case was Marcus Scott ("Detective Scott"). Prior to Detective Scott testifying, the trial court heard the parties'

arguments on whether the detective should be permitted to testify that Chandler has a prior involuntary-manslaughter conviction. After considering the parties' positions, and reviewing the rules of evidence and case law, the trial court ruled that Detective Scott would not be permitted to testify about Chandler's prior conviction.

{¶ 23} Detective Scott obtained surveillance video from several businesses in the area of the chase as well as from a RTA bus that the two vehicles passed during the chase. One video showed that Liccardo was in the left-hand turn lane on Libby Road (to turn onto Lee Road) when Wilkinson's truck "bumped" his vehicle from behind. After Liccardo approached Wilkinson, Wilkinson ran a red light at the intersection of Libby and Lee Roads and continued driving down Libby Road. Liccardo drove out of the turn lane, ran the red light, and drove down Libby Road too. The detective testified that Liccardo's chase of Wilkinson's truck spanned six intersections. Detective Scott recovered five spent casings from the last two intersections of the chase.

{¶ 24} Further, Detective Scott viewed area Flock cameras to determine that after Liccardo's vehicle left the intersection where Wilkinson was shot, the vehicle traveled in the area leading to Malissa's house and subsequently exited a highway at an exit for the City of Twinsburg. The Kia was registered to Liccardo's wife at a Twinsburg address. Detective Scott obtained and executed a search warrant at the home. Ammunition was found in the home but no weapon was recovered during the search. Liccardo's wife was home at the time, but Liccardo was not present, and his wife told the police she did not know where he was.

{¶ 25} Later the same day of the search, a female friend of Liccardo's went to the police and gave them Liccardo's cell phone and wallet. Liccardo's wife gave the police the password to the phone.

{¶ 26} Detective Scott investigated the cell phone. His investigation corroborated the witnesses' statements about the trip to Memphis. While on the trip, Liccardo made video recordings and took pictures on his cell phone. One of the videos showed him with a handgun in his pocket. Liccardo also had various pictures of himself posing with guns, which he held in his left hand. The detective issued a warrant for Liccardo's arrest.

{¶ 27} The Maple Heights police processed the Kia, which was at Liccardo's home in Twinsburg. The police noted "slight damage," described as "scrapes and scuff marks" to the rear bumper of the vehicle.

{¶ 28} The police also processed Wilkinson's truck. There were bullet defects to the back passenger taillight, rear license plate, rear bumper, and rear window. The police used a trajectory rod to determine that the bullet defect to the rear window grazed a baby seat in the backseat and then penetrated the driver's seat headrest.

{¶ 29} Dr. Joseph Felo ("Dr. Felo"), the chief deputy medical examiner for Cuyahoga County, performed an autopsy on Wilkinson and testified at trial. Dr. Felo testified that Wilkinson died from a single gunshot wound to his head. The doctor testified that the bullet entered the back of Wilkinson's head but did not exit. He recovered the bullet, which had fragmented into three parts, during the autopsy.

Toxicology testing of Wilkinson's blood revealed that his blood-alcohol level was more than three times the legal limit.

{¶ 30} On June 19, 2023, Indiana State Police troopers arrested Liccardo south of Indianapolis. One of the troopers testified that he initiated a traffic stop of a Hyundai Accent that had an expired temporary Ohio license plate; Liccardo was the driver and sole occupant of the vehicle. The trooper testified that the road the vehicle was on was secluded — not one that a traveler looking for food or gas would be on — and he found that "odd." The trooper's interaction with Liccardo was recorded on body camera, and the video was played for the jury and admitted into evidence as State's exhibit No. 198A.

{¶ 31} Liccardo did not have a license or registration with him and initially provided the trooper with a false name. Upon the trooper's further questioning, Liccardo told the trooper his correct name and told him that he thought he was "wanted" and he "ran." That trooper went to check for warrants while a second trooper stayed with Liccardo. The second trooper also had a body camera, and his interaction with Liccardo was captured on it; the recording was played at trial and admitted into evidence as State's exhibit No. 199A.

{¶ 32} Liccardo told the second trooper, "I'm wanted in connection with some crime. It's violent." Liccardo told the trooper that he was coming from Kentucky, where he had been praying at his ancestors' grave sites. Liccardo further said that he was trying to get some clarity and he wanted to see his family in

Twinsburg, Ohio, one last time.  Liccardo mentioned that he had a young son who may never see him again.

{¶ 33} Meanwhile, the first trooper confirmed that Liccardo had a warrant for murder in Ohio.  Upon returning to where Liccardo was, the trooper questioned Liccardo, "You're wanted for a homicide?"  Liccardo responded, "I ran before I could find out."

{¶ 34} The police searched the Hyundai and found a notebook and a patch that said "Golden."  In the notebook were handwritten notes, which included the name of the victim (Wilkinson) and notes to Liccardo's family saying how much he loved them and wished he could have been a better father.  There was also a writing saying he was "safe" but that was crossed out.

**Crim.R. 29 Motion, Jury Instruction, Verdict, and Sentence**

{¶ 35} At the close of the State's case, the defense made a Crim.R. 29 motion for judgment of acquittal, which the trial court denied.  The defense rested without presenting evidence and renewed its Crim.R. 29 motion.  The court denied the motion.

{¶ 36} The State requested a complicity jury instruction, which the defense opposed.  The trial court granted the State's request and instructed the jury on complicity.

{¶ 37} The jury returned not guilty verdicts on Counts 1 and 2, aggravated murder and murder, respectively, and Count 6, discharge of a firearm on or near prohibited premises.  The jury returned guilty verdicts on Count 3, murder, with a

one-year firearm specification; and Counts 4 and 5, felonious assault, both with one-year firearm specifications. Liccardo was acquitted on the remaining three- and five-year firearm specifications.

{¶ 38} At sentencing, the trial court merged Counts 4 and 5 (felonious assault) into Count 3 (murder) and the State elected to proceed on the murder count. The trial court sentence Liccardo to one year on the firearm specification attendant to Count 3, to be served prior to and consecutively to a term of 15 years to life on the murder count. The court also sentenced Liccardo to one-year terms on each of the firearm specifications attendant to Counts 4 and 5, to run consecutively to the sentencing on Count 3. Thus, Liccardo was sentenced to an aggregate term of 18 years to life, which included three years of firearm specifications.

**Assignments of Error**

I.  Appellant's convictions were against the manifest weight of the evidence.

II. Appellant's convictions were unsupported by sufficient evidence.

III. The trial [court] abused its discretion by giving the jury a complicity instruction.

IV. The trial court erred by prohibiting defense counsel from questioning the lead detective about a non-testifying witness's prior criminal conviction.

V.  Appellant's sentence is contrary to law because the trial court imposed prison terms for firearm specifications attached to merged offenses.

**Law and Analysis**

**The Convictions Were Not Against the Manifest Weight of the Evidence**

{¶ 39} In his first assignment of error, Liccardo contends that his murder and felonious-assault convictions were against the weight of the evidence. We disagree.

{¶ 40} A manifest-weight challenge questions whether the State has met its burden of persuasion. *State v. Thompkins*, 78 Ohio St.3d 380, 390 (1997). Weight of the evidence addresses the evidence's "*effect of inducing belief.*" (Emphasis in original.) *Id.* at 387, quoting *Black's Law Dictionary* (6th Ed. 1990).

{¶ 41} When a defendant argues that his or her conviction is against the manifest weight of the evidence, we "must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *In re Z.C.*, 2023-Ohio-4703, ¶ 14, citing *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 20. "However, '[r]eversal on the manifest weight of the evidence and remand for a new trial are not to be taken lightly.'" *Id.* at ¶ 16, quoting *id.* at ¶ 31. Thus, "'[t]he discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983).

{¶ 42} Liccardo contends that the convictions were against the manifest weight of the evidence because the jury's verdict suggests "that the jury believed that Chandler fired the shots at Wilkinson's truck, and Liccardo, as the driver, was

complicit in felonious assault and felony murder." (Appellant's brief, p.6.) Liccardo's contention is a red herring because an accomplice to the commission of a criminal offense is subject to the same prosecution and punishment as the principal offender. *See* R.C. 2923.03(F). Regardless, under either theory — as an accomplice or principal actor — the weight of the evidence supports the convictions against Liccardo.

{¶ 43} Liccardo was convicted of murder under R.C. 2903.02(B) which required the State to prove that Liccardo caused Wilkinson's death as a proximate cause of committing felonious assault. Liccardo was convicted of two alternative counts of felonious assault. In Count 4, Liccardo was convicted under R.C. 2903.11(A)(1), which required the State to prove that he did knowingly cause serious physical harm to Wilkinson. In Count 5, Liccardo was convicted under R.C. 2903.11(A)(2), which required the State to prove that he did knowingly cause or attempt to cause physical harm to Wilkinson by means of a deadly weapon or dangerous ordnance.

{¶ 44} In support of his contention that his convictions as a principal actor were against the weight of the evidence, Liccardo asks us to consider, "What evidence did the prosecution present that Liccardo was arguably the principal actor in the shooting?" (Appellant's brief, p.7.) Liccardo then answers his question with "Only the testimony of Allen and Matthews." *Id.* That testimony was enough; but the State presented additional evidence supporting the convictions.

{¶ 45} Liccardo contends that Allen's testimony that she did not actually see Liccardo fire the weapon jeopardizes the convictions. Allen's testimony was circumstantial evidence that Liccardo was the shooter. Circumstantial and direct evidence inherently possess the same probative value. *State v. Jenks*, 61 Ohio St.3d 259, 272 (1991). It is not necessary that circumstantial evidence be irreconcilable with every reasonable theory of innocence to support a conviction. *Id.* All that is required is that the evidence, whether direct or circumstantial, convince the trier of fact of the defendant's guilt beyond a reasonable doubt.

{¶ 46} Liccardo also contends that Allen, Matthews, and Chandler all had incentives to implicate Liccardo: Chandler because he was the shooter, Allen because she and Chandler have a child together, and Matthews because she is Allen's sister.

{¶ 47} In considering Liccardo's claims, we must be mindful that questions of weight and credibility are primarily for the trier of fact to determine. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). This is because "'[t]he demeanor of witnesses, the manner of their responses, and many other factors observable by a jury [. . .] simply are not available to an appellate court on review.'" *State v. Bailey*, 2012-Ohio-3955, ¶ 11 (8th Dist.), quoting *State v. Bierbaum*, 1990 Ohio App. LEXIS 1204, *4 (3d Dist. Mar. 4, 1990).

{¶ 48} "[W]hen considering a manifest weight challenge, the trier of fact is in the best position to take into account inconsistencies, along with the witnesses' manner, demeanor, gestures, and voice inflections, in determining whether the

proffered testimony is credible."  *State v. McNamara*, 2016-Ohio-8050, ¶ 36 (8th Dist.), citing *State v. Kurtz*, 2013-Ohio-2999 (8th Dist.).  "The jury may take note of any inconsistencies and resolve them accordingly, 'believing all, part, or none of a witness's testimony.'"  *State v. Hill*, 2013-Ohio-578, ¶ 33 (8th Dist.), quoting *State v. Raver*, 2003-Ohio-958, ¶ 21 (10th Dist.).  "Therefore, we afford great deference to the factfinder's determination of witness credibility."  *Id.*

{¶ 49} Allen's and Matthews's testimonies were not incredible.  They both implicated Liccardo as the shooter, and when they learned of Wilkinson's death they voluntarily went to the police, gave statements, and cooperated with the investigation.

{¶ 50} Further, in addition to Allen's and Matthews's testimonies implicating Liccardo, forensic evidence also implicated Liccardo as the shooter.  Photographs taken while Liccardo was on the Memphis trip showed him with a gun in his left hand.  Allen testified that Liccardo's left arm was extended out of the window and after he extended it she heard shots being fired.  The police investigation revealed that Wilkinson's truck had a bullet defect, among others, to the rear window; the bullet grazed a baby seat in the backseat and then penetrated the driver's seat headrest, which would be consistent with the driver (Liccardo) of the Kia firing the shots.

{¶ 51} Additionally, Chandler remained in the jurisdiction and voluntarily went to the police after the shooting while Liccardo fled.  Before fleeing, Liccardo left his cell phone and wallet with a female friend and then drove to Kentucky to pray

at his ancestors' grave sites and gain clarity. When law enforcement officials stopped him in Indiana, he told them that he "ran" because he was "wanted" for a violent crime.

{¶ 52} On this record, the weight of the evidence supported the convictions against Liccardo as the principal actor.

{¶ 53} The weight of the evidence also supported the convictions under the alternative theory of Liccardo as an accomplice to Chandler. Liccardo contends that "there was no evidence that Liccardo or anyone else discussed or planned shooting at Wilkinson's truck." (Appellant's brief, p. 9.) That is true and presumably why the jury acquitted Liccardo of aggravated murder under R.C. 2903.01(A), which requires proof of prior calculation and design. But the evidence that was adduced would support a finding that Liccardo was an aider and abettor to Chandler.

{¶ 54} Under the complicity statute, "no person acting with the kind of culpability required for the commission of an offense, shall . . . [a]id or abet another in committing the offense." R.C. 2923.03(A)(2). In order to support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), "the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal." *State v. Johnson*, 2001-Ohio-1336, syllabus. "In the absence of a conspiracy, or some preceding connection with the transaction, one does not aid or abet if he [or she] merely sees a crime being

committed." *State v. Ramirez*, 2001 Ohio App. LEXIS 3252, *16-17 (6th Dist. July 20, 2001), citing *State v. Starr*, 24 Ohio App.2d 56, 58 (1st Dist. 1970).

{¶ 55} Evidence of aiding and abetting another in the commission of a crime may be demonstrated by both direct and circumstantial evidence. *State v. Tuttle*, 1987 Ohio App. LEXIS 7776, *10 (8th Dist. July 2, 1987). Although mere association with the principal offender or presence at the scene of the crime alone is insufficient to establish complicity, an aider or abettor's shared criminal intent may be inferred from the circumstances surrounding the crime. *State v. Sims*, 10 Ohio App.3d 56, 58 (8th Dist. 1983).

{¶ 56} In *Sims*, this court concluded a defendant cannot be an aider or abettor unless

> [h]e [or she] knowingly does something which he [or she] ought not to do, or omits to do something he [or she] ought to do, which assists or tends in some way to affect the doing of the thing which the law forbids; in order to aid or abet, whether by words, acts, encouragement, support or presence, there must be something more than a failure to object unless one is under a legal duty to object.

*Id.* at 59.

{¶ 57} The weight of the evidence supported the convictions under a complicity theory. The evidence demonstrated that Liccardo was in the left turn lane when Wilkinson hit his car. After Wilkinson drove away from the scene, Liccardo drove his car out of the turn lane so that he could pursue Wilkinson. Liccardo admits that "[s]ure, [he] could have immediately gone to the police station." (Appellant's brief, p. 11.) But Liccardo justifies his action in following Wilkinson on the ground that "Wilkinson was heavily intoxicated and fleeing the scene of an accident." *Id.*

The fact that Wilkinson was intoxicated and driving dangerously would have been the very reason why one would seek police intervention. Liccardo's insinuation that he was merely trying to perform a public-safety service is unconvincing. Moreover, Liccardo's actions after the shooting were circumstantial evidence supporting the convictions under a complicity theory. Specifically, Liccardo did not report that Chandler or anyone else in the car started firing at Wilkinson's vehicle while he was trying to get the license plate number. Rather, instead of reporting the incident, as the passengers did (albeit days after the fact), Liccardo fled the jurisdiction.

{¶ 58} Further, Liccardo's contention that he was only trying to get Wilkinson's license plate number is belied by the recording Matthews made. The recording demonstrates that when Matthews and Chandler got back in the Kia after Wilkinson fled the scene, Liccardo asked if they got Wilkinson's license plate number and Matthews said she did. Indeed, she had a picture of Wilkinson's license plate on her cell phone.

{¶ 59} On this record, Liccardo's convictions, as either the principal actor or an aider and abettor, were not against the manifest weight of the evidence. The first assignment of error is overruled.

**The State Presented Sufficient Evidence to Support the Convictions**

{¶ 60} For his second assignment of error, Liccardo contends that the State failed to present sufficient evidence to support the convictions.

{¶ 61} When considering a challenge to the sufficiency of the evidence, we review the evidence admitted at trial and determine whether such evidence, if

believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *Jenks*, 61 Ohio St.3d at paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* A reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *Thompkins*, 78 Ohio St.3d at 390.

{¶ 62} Liccardo makes the same arguments he made in his weight-of-the-evidence challenge for his sufficiency-of-the-evidence challenge. "Although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency." *Cleveland v. Roche*, 2012-Ohio-806, ¶ 8, citing *State v. McCrary*, 2011-Ohio-3161, ¶ 11 (10th Dist.); accord *State v. Winbush*, 2017-Ohio-696, ¶ 58 (2d Dist.). "As a result, 'a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency.'" (Citations omitted.) *State v. Farra*, 2022-Ohio-1421, ¶ 51 (2d Dist.), quoting *State v. Braxton*, 2005-Ohio-2198, ¶ 15 (10th Dist.).

{¶ 63} Because we find that the weight of the evidence supports the convictions, we necessarily find the convictions were supported by sufficient evidence. The second assignment of error is overruled.

**No Abuse of Discretion in Instructing Jury on Complicity**

{¶ 64} In his third assignment of error, Liccardo contends that the trial court abused its discretion in instructing the jury on complicity. According to Liccardo, "there was not sufficient evidence that [he] supported, assisted, encouraged, cooperated with, advised, or incited the principal in committing felonious assault." (Appellant's brief, p. 16).

{¶ 65} When instructing a jury, a trial court is required to provide "a plain, distinct, and unambiguous statement of the law applicable to the evidence." *State v. Driggins*, 2012-Ohio-5287, ¶ 73 (8th Dist.), citing *Marshall v. Gibson*, 19 Ohio St.3d 10 (1985). "A jury instruction is proper where '(1) the instruction is relevant to the facts of the case; (2) the instruction gives a correct statement of the relevant law; and (3) the instruction is not covered in the general charge to the jury.'" *State v. Walker*, 2012-Ohio-4274, ¶ 53 (8th Dist.), quoting *State v. Kovacic*, 2012-Ohio-219, ¶ 15 (11th Dist.). It is well established that the trial court should not instruct the jury where there is no proof to support the instruction. *Riley v. Cincinnati*, 46 Ohio St.2d 287, 297 (1976). Trial courts have broad discretion in determining whether the evidence adduced at trial was sufficient to warrant a jury instruction. *State v. Mitts*, 81 Ohio St.3d 223, 228 (1998).

{¶ 66} Prior to the start of this retrial, the State gave the trial court and defense notice of its intent to pursue the alternative theory that Liccardo was complicitous in the murder of Wilkinson. "R.C. 2923.03(F) permits alternative theories of culpability in cases where the evidence supports both complicity and

principal liability." *State v. Jewell*, 2025-Ohio-2496, ¶ 71 (1st Dist.). Further, this court has upheld an aiding and abetting instruction in an instance where the defendant, as the driver of a vehicle, "did not stop or abandon the area so that [the principal actor] would not be able to shoot . . . ." *State v. Walker*, 2018-Ohio-5172, ¶ 49 (8th Dist.).

{¶ 67} Liccardo contends that there was no evidence to support instructing the jury on complicity. We disagree. As discussed, the State presented sufficient evidence for the jury to consider whether, if it could not conclude that Liccardo was the shooter, Liccardo aided and abetted in the shooting. Specifically, the trial testimony and forensic evidence demonstrated that instead of abandoning the pursuit of Wilkinson, Liccardo continued to pursue him through a total of six intersections.

{¶ 68} Moreover, the defense argued to the jury that Chandler was the shooter and that Chandler, Allen, and Matthews all had time and a motive to concoct a story that Liccardo was the shooter. Even if that were true, again, Liccardo's action as the driver of the Kia (the defense never disputed that Liccardo was indeed the driver), supported the complicity instruction.

{¶ 69} On this record, the trial court did not abuse its discretion by instructing the jury on complicity. The third assignment of error is overruled.

## No Abuse of Discretion with Exclusion of Nontestifying Witness's Criminal Record

{¶ 70} For his fourth assigned error, Liccardo contends that the trial court erred by excluding testimony from Detective Scott that Chandler, who did not testify, had a record including a prior conviction for involuntary manslaughter.

{¶ 71} We review a trial court's evidentiary rulings for an abuse of discretion. *In re J.P.*, 2003-Ohio-3522, ¶ 24 (8th Dist.). An abuse of discretion is defined as "a court exercising its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35.

{¶ 72} Evid.R. 404 governs character evidence and provides in part that "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion . . . ." Evid.R. 404(A). There are exceptions, however. Relevant here, the rule provides that "[e]vidence of the character of a witness on the issue of credibility is admissible as provided in Rules 607, 608, and 609." Evid.R. 404(A)(3). Evid.R. 607 governs the impeachment of a testifying witness; Evid.R. 608 governs evidence of the character and conduct of a witness; and Evid.R. 609 governs impeachment of the credibility of a witness through evidence of a criminal conviction.

{¶ 73} Further, Evid.R. 404(B)(1) provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." The exceptions to the rule are set forth in Evid.R. 404(B)(2), which provides that

"[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."

{¶ 74} All of these evidentiary rules relate to a *testifying witness*. Chandler did not testify and thus the exceptions to the general prohibition of character evidence are wholly inapplicable to him. Moreover, our review of the record demonstrates that the State did not question its other witnesses about what Chandler said —further cementing that Chandler's credibility, as a nontestifying witness, was not an issue in this case.

{¶ 75} Liccardo attempts to circumvent the rules by contending that he did not seek to use Chandler's involuntary-manslaughter conviction to demonstrate that Chandler acted in conformity with the prior conviction. Rather, Liccardo contends that he sought to introduce Chandler's prior conviction as a way to challenge the police's investigation of the case. We are not persuaded.

{¶ 76} This court has held that "[p]ursuant to Evid.R. 609(A), evidence concerning previous criminal convictions is only admissible to attack the credibility of a witness. [The defendant] did not testify at trial, and, therefore evidence of his prior criminal record is inadmissible." *State v. Washington*, 2002 Ohio App. LEXIS 460, *7 (8th Dist. Feb. 7, 2002). At trial, Liccardo argued that *Washington* was inapplicable to this case because it involved a defendant's prior conviction whereas here the issue related to a witness's prior conviction. We find Liccardo's argument flawed. As stated, the evidentiary rules apply to *testifying* witnesses. Chandler was

not a testifying witness. And more specifically, Evid.R. 609 relates to a prior conviction of a defendant (*see* Evid.R. 609(A)(2) and (3)) and a testifying witness (*see* Evid.R. 609(A)(1) and (3)).

{¶ 77} On this record, the trial court did not abuse its discretion by excluding testimony about Chandler's prior conviction. The fourth assignment of error is overruled.

**The Sentence was not Contrary to Law**

{¶ 78} In Liccardo's fifth assignment of error, he contends that his sentence was contrary to law.

{¶ 79} Liccardo was convicted of one count of murder and two counts of felonious assault as well as the attendant one-year firearm specifications for each of the three counts. At sentencing, the trial court merged the two counts of felonious assault into the murder count and the State elected to proceed on the murder count. In addition to time sentenced on the underlying murder count (15 years), the trial court also sentenced Liccardo to three years on the gun specifications, one year for each specification to be served consecutively. Liccardo now challenges the sentences on the firearm specifications for the felonious-assault convictions.

{¶ 80} R.C. 2929.14(B)(1)(g) provides in relevant part that

[i]f an offender is convicted of or pleads guilty to two or more felonies, if one or more of those felonies are . . . murder [or] . . . felonious assault . . . and if the offender is convicted of or pleads guilty to a [firearm] specification . . . in connection with two or more of the felonies, the sentencing court shall impose on the offender the prison term specified under division (B)(1)(a) of this section for each of the two most serious specifications of which the offender is convicted or to which the

offender pleads guilty and, in its discretion, also may impose on the offender the prison term specified under that division for any or all of the remaining specifications.

{¶ 81} In a plurality opinion, the Supreme Court of Ohio held that the plain language of R.C. 2929.14(B)(1)(g) mandates the imposition of sentences for specifications for merged counts. *State v. Bollar*, 2022-Ohio-4370, ¶ 1. Liccardo asks us to disregard the *Bollar* plurality opinion and follow the dissent instead. This court has followed *Bollar*, and we decline to stray from our own and the Supreme Court of Ohio's precedent. For example, in *State v. Dobson*, 2025-Ohio-2148 (8th Dist.), this court stated:

> The *Bollar* Court deferred to the legislature's exercise of discretion in enacting R.C. 2929.14(B)(1)(g), noting that in requiring certain offenders to be subject to separate prison terms for multiple firearms specifications, "the General Assembly appears to have acknowledged that the use of firearms in certain violent crimes should carry a hefty penalty." . . . We follow this binding precedent.

*Id.* at ¶ 67, quoting *Bollar* at ¶ 20.

{¶ 82} In light of *Bollar* and this court's precedent, the trial court did not err in imposing sentences for all three one-year firearm specifications. The fifth assignment of error is overruled.

{¶ 83} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's

conviction having been affirmed, any bail pending appeal is terminated.  Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHAEL JOHN RYAN, JUDGE

MARY J. BOYLE, P.J., and
DEENA R. CALABRESE, J., CONCUR